MAHAR v. COMPTON.

(Supreme Court, Appellate Division, Fourth Department. June 12, 1897.)

SALES—UNEQUIVOCAL OFFER—INSUFFICIENT ACCEPTANCE.

The amount of a debt was disputed, and the creditor offered to buy two engines from the debtor in part payment. The debtor wrote that, if the creditor would divide the difference between the amounts asked and offered for the engines, he would send a check for the balance claimed. The creditor wrote: "You are a good deal like my wife. I have to let her have the last say. I hope you will tell the boys to try and find the rod for the big engine. It must be round there some place. Don't load the engines yet, for I am too busy to take care of them now." Held, that no title passed, as against a subsequently appointed receiver of the debtor's property.

Appeal from trial term, Niagara county.

Action by John Mahar against James Compton. From a judgment in favor of plaintiff on an assessment made by a jury, and from an order denying a motion to set aside the assessment of the jury, defendant appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

George D. Judson, for appellant.
Norman D. Fish, for respondent.

ADAMS, J. The plaintiff brings this action to recover the value of two stationary engines which he claims to have purchased of the Middleport Manufacturing Company, and which he alleges in his complaint were converted and disposed of by the defendant, to the plaintiff's damage in the sum of $75. The defenses interposed by the defendant are: (1) A general denial; (2) an allegation that the title to the engines never passed to the plaintiff, but that they belonged to the defendant as receiver of the Middleport Manufacturing Company, that no sufficient demand had ever been made upon him to charge him personally with a conversion thereof, and that their value was

not to exceed $50; and (3) that if there was any valid agreement between the plaintiff and such corporation relative to the engines, it was only an executory agreement of accord and satisfaction, which did not pass the title thereof to the plaintiff.

There is little or no controversy respecting the material facts of the case, and, so far as it is necessary to consider them, they may be thus briefly stated, viz.: The plaintiff, at the time of the alleged conversion, was carrying on business, under the name of the American Engine & Boiler Works, at the village of Tonawanda, in this state. In the early part of 1896, there existed an unsettled and open account between him and the Middleport Manufacturing Company, upon which the plaintiff claimed there was due him the sum of $87.78. This claim was disputed by the manufacturing company, which, through its secretary, Mr. Judson, insisted that the amount due the plaintiff was not as large as he claimed it to be. The parties thereupon entered into negotiations for a settlement of this disputed claim. These negotiations were carried on through the medium of letters, and they finally culminated in a letter from Judson which contained a definite proposition of settlement. This letter was answered by the plaintiff, who rests his claim of title to the property in question upon the contention that his written reply thereto contained an acceptance of Judson's proposition. As the rights of the parties depend entirely upon the construction to be given to the language of these two letters, it is proper that they should appear in this connection, and in the order in which they were written:

"Middleport, N. Y., Apr. 10, 1896.

"American Engine & Boiler Works, Tonawanda, N. Y.—Gentlemen: Replying to yours of April 8th, will say that we thought you too much of a gentleman to work himself up to such a heat as you have over a little matter of this kind, in which there is an honest difference between us. We give you credit for being sincere in your position, and we surely are sincere in ours; and it seems too bad to go to a suit over a little difference of $15. You must not blame us for being as unwilling to recede from our position as you are from yours, and we now, in a spirit of the utmost friendliness and sincerity, offer to split the difference between the $60 which you now offer us, and the $75 which we told you we would take for the engines; that is, if you will allow us $67.50 for the engines, we will send you a check for the difference. We defer to your wishes to say nothing more about your alleged offer to us for the engines, or about the work of your men here; but we do wish to be treated fairly in this matter, and we certainly can neither of us afford to litigate over a matter of $15, and therefore I propose, as above stated, that we divide the difference. Your acceptance of this offer will insure an immediate settlement of the matter. Kindly let us hear from you at your earliest possible convenience, and let us settle the difficulty, and start again good friends.

"Yours, truly,　　　Middleport Mfg. Co., per G. D. Judson, Sec."

"Tonawanda, N. Y., April 14, 1896.

"Middleport Mfg. Co., G. D. Judson, Sec'y—Gents: Yours of the 10th at hand, and will say, in the first place, you offered me them engines for $65, if you are not forgetful, the last time I was down; but this is a small matter. What I feel hurt about is you saying I overcharged you about $50. That was not so, and you know it. Mr. Park asked me, the first time I came down to examine boilers, what he should get for the two engines. I told him he ought to get about $100, and ask for the refusal of engines. That is as near as I ever came of offering anything, only with you; and I'm not anxious to go lawing. You are a good deal like my wife. I have to let her have the last say. I hope you will tell the boys to try and find the rod for the big

engine. It must be round there some place. Don't load the engines yet, for I am too busy to take care of them now.

"Yours, truly,                              John Mahar, E. L. B."

After these letters had been written, and on the 24th day of April, 1896, the defendant was appointed receiver of the manufacturing company. He thereupon duly qualified and entered upon the discharge of his duties as such receiver, and subsequently the two engines passed into his possession with the other assets of the company. Upon the 18th day of June, following the defendant's appointment, the plaintiff claims to have demanded the engines of the defendant, and, upon his demand being refused, he brought this action. The issues presented by the pleadings were brought to trial at a trial term of the supreme court held in Niagara county, on the 1st day of October, 1896; but at the close of the evidence it was stipulated by the attorneys for the respective parties that the question of the value of the property alleged to have been converted should be submitted to the jury, and that all other questions in the case should be reserved for decision by the court without a jury. The value of the property was subsequently determined by the jury at the sum of $67.50, and the court thereafter found as a fact that the plaintiff was the owner of the two engines in question by purchase from the manufacturing company, and that on the 18th day of June, 1896, the defendant converted them to his own use.

It is not claimed that there was any evidence in the case sufficient to sustain the finding as to the title to this property, other than the two letters to which reference has already been made. It becomes necessary, therefore, to determine whether or not these letters were sufficient to establish a contract of purchase and sale between the writers. It will be discovered, upon reading the entire correspondence contained in the record, that the plaintiff claimed that his bill against the manufacturing company amounted to $87.78, and that, after some preliminary negotiations, he had offered to allow $60 for the engines if the company would pay him the balance of his claim in cash, but that the latter was unwilling to dispose of the engines for less than $75, until finally, in the letter of April 10th, a proposition was made to sell the plaintiff the engines for $67.50, and send him a check for the difference between that sum and the amount of his bill. This was a perfectly plain proposition, concerning which there could have been no misunderstanding, and, although made by letter, it was competent for the plaintiff in the same manner to have consummated the contract by simply accepting or declining the offer thus made. It is well settled, however, that, in order to establish a legal contract through the medium of correspondence, it must be made to appear that there was, not only a plain, unequivocal offer, but that the acceptance of such an offer was equally plain and free from ambiguity. In other words, there must have been an exact meeting of the minds of the contracting parties in respect to every detail of the proposed contract; and if the precise thing offered was not accepted, or if the acceptance was in any manner qualified by conditions or reservations, however slight they may have been, the universal rule seems to be that no valid

contract is thereby established, but that such a modified or qualified acceptance must rather be treated as a rejection of the offer. Bish. Cont. §§ 176–179; Myers v. Smith, 48 Barb. 614; Uhlmann v. Day, 38 Hun, 298; Myers v. Trescott, 59 Hun, 395, 13 N. Y. Supp. 54; Sidney Glass Works v. A. S. Barnes & Co., 86 Hun, 374, 33 N. Y. Supp. 508; Railroad Co. v. Dane, 43 N. Y. 240; Barrow S. S. Co. v. Mexican Cent. Ry. Co., 134 N. Y. 15, 31 N. E. 261.

With this rule in mind, we find great difficulty in so reading the plaintiff's letter of April 14th as to discover therein any language which may be regarded as an actual and unqualified acceptance of the offer contained in the letter to which it was a reply. Indeed, it is only by the most liberal construction of language that an acceptance even by implication can be spelled out of it. It is true the plaintiff says: "You are a good deal like my wife. I have to let her have the last say,"—which may, perhaps, fairly bear the interpretation, sought to be given it, that the writer regarded the correspondence as at an end; and the concluding sentence, "Do not load the engines yet, for I am too busy to take care of them now," standing by itself, might possibly indicate a disposition on his part to accept Judson's offer. But this, it is to be observed, is preceded by something in the nature of a qualification, which reads as follows, viz.: "I hope you will tell the boys to try and find the rod for the big engine. It must be round there some place." It is also a circumstance of some significance that the letter does not express a willingness upon the part of the plaintiff to accept a check for the balance of the account due him, and it nowhere appears that such a check was subsequently sent to or demanded by him. The evidence likewise fails to disclose whether the missing rod was ever found, and unquestionably the language last quoted left the plaintiff at liberty to refuse acceptance of the engines at the price named unless the rod accompanied them. We think it quite plain, therefore, that, within the rule just adverted to, this letter was insufficient to constitute an unconditional acceptance of the offer contained in the letter written by the secretary of the manufacturing company; and, consequently, it cannot be said that the correspondence as a whole contained a contract in all the elements of which the minds of the parties met. For this reason we conclude that the learned trial court was in error in finding that the title to the property in question ever passed to the plaintiff, and, such being the case, it necessarily follows that there could have been no conversion of the same by the defendant. The judgment and order appealed from must, therefore, be reversed, and a new trial ordered, with costs to abide the event.

Judgment and order reversed, and a new trial ordered, with costs to abide the event. All concur.