MACHINERY UTILITIES COMPANY, INC., Respondent, *v.* WILFRED W. FRY and Others, Surviving Partners of the Firm of AYER & McKINNEY, Appellants.

First Department, November 2, 1928.

*Matteo Spalletta* of counsel [*Bell & Byard*, attorneys], for the appellants.

*Woolsey A. Shepard* of counsel [*Ferris, Shepard, Joyce & McCoy*, attorneys], for the respondent.

FINCH, J. From an order denying the motion of defendants for judgment on the pleadings dismissing the complaint (taken in conjunction with the bill of particulars) under rule 112 of the Rules of Civil Practice, upon the ground that the same does not state a cause of action upon its face, the defendants appeal.

The sole point involved is whether or not certain letters between the parties show a meeting of the minds of the parties upon an offer and alleged acceptance. The letters, numbered one to six, relied upon to establish the contract, are annexed to the amended bill of particulars. The defendants are right in their contention, as a perusal of the letters shows no meeting of the minds of the parties. This appears more fully as follows: The plaintiff first wrote to the defendants submitting specifications of a refrigerating plant which the plaintiff had taken the defendants to see, and

asking the defendants, in case they desired to purchase the plant, to sign and return one of the specifications inclosed with the letter. In answer thereto, the defendants wrote that their inspection had proven very unsatisfactory, as the cylinder was scored and out of round, besides which they understood that the manufacturer of this machine was no longer in business. The defendants further wrote: " If they are still in business, we might be interested in purchasing the same at a reduced price so we can put on a new cylinder head, *but if they are not in business, we do not want the machine at any price.*" (Italics not in the original.) In answer the plaintiff wrote that as to the first objection, namely, that the manufacturer had gone out of business, parts for the machine could be secured as all patterns of the manufacturers had been taken over by other parties who were very glad to furnish any parts necessary; and as to the second objection, of the repair needed to the cylinder, that this would be a small job costing but a few dollars, and suggesting that the plaintiff would be willing, for an additional sum of $50, to guarantee to make any repairs which would be necessary. In other words, for a sum total of $1,650, plaintiff proposed to turn over the plant in absolutely first-class condition; further adding, in a postscript, that if, however, the defendants were unalterably opposed to this machine, they would be glad to have them look at another machine, which they specified. Following this letter, the plaintiff again wrote to the defendants a letter stating that they had received a telegram that another concern had patterns for this machine and that the persons previously mentioned also had patterns; that it was the plaintiff's understanding that, provided the people referred to could *furnish any parts defendants might need,* the defendants would be willing to accept " our offer to furnish the entire plant at Salus & Sons with the cylinder and head rebored and new piston rings furnished, all for the sum of $1,650." To these two last letters the defendants replied that they would not accept any proposition of this character. " We will, however, as stated in our previous letter, pay you $1,600.00 for the outfit if Vogt Brothers Manufacturing Company *are manufacturing these machines at the present time,* and you to pay for reboring the cylinder and putting in new rings. *If, however, Vogt Bros. are not manufacturing these machines we will not be interested at all.*" (Italics not in original.) In answer, the plaintiff sent a letter which it claims is an acceptance:

" In reply to yours of the 4th, would advise that your offer of Sixteen Hundred Dollars ($1600.00) for the refrigerating outfit covered by our specification of November 27th with the understanding that we are to pay for reboring the cylinder and putting

in new rings is acceptable to us. We are enclosing herewith revised agreement including this understanding.

" We are in receipt of advice from Vogt Bros. stating that they have all patterns for this machine and are able to furnish any parts desired.

" We understand Mr. White is out of town at present and beg to advise that the writer would be pleased to come to Philadelphia when Mr. White returns in order to definitely settle this matter and make arrangements for the reboring and new rings.

" Very truly yours,
" MACHINERY UTILITIES COMPANY."

To this letter was attached the revised agreement offering to sell the refrigerating plant for the sum of $1,600, and then adding: " Terms: One-half cash with order, balance when work of reboring and new rings have been completed and bill of sale for the plant is turned over to you." This agreement was never signed by the defendants. It is clear from these letters that the acceptance by the plaintiff did not meet the offer as submitted by the defendants, and this for two reasons. In the first place, the defendants made, as a part of their offer, the condition that Vogt Brothers should still be manufacturing these machines, and there is no proof that this condition has ever been fulfilled. In accepting the offer the plaintiff disregarded this term of the offer, and nothing is said as to this term of the offer in the revised agreement. That this was an integral part of the offer, is seen from the fact that the defendants insisted upon it in their very first letter and reiterated it in this last letter, even though the plaintiff in the meantime had attempted to do away with this objection by suggesting that it was of no moment, since even though the manufacturer was out of business, new parts for the machine could be obtained on order from another concern who had the patterns. The condition that Vogt Brothers were manufacturing the machines was not met by a mere reiteration that they had the patterns. Furthermore, the plaintiff proposed a method of paying for the machine, namely, one-half cash with order and in advance of the bill of sale, and the balance when the bill of sale was turned over. The defendants had never offered to pay one-half the purchase price of the plant before receiving the same, and there is, therefore, nothing to show that the minds of the parties met on this provision also.

The further objection to the claim that the so-called acceptance letter shows a meeting of the minds of the parties is the expressed reservation therein that the writer " would be pleased to come to Philadelphia when Mr. White returns in order *to definitely settle this matter* * * *." (Italics not in original.)

What the plaintiff really did by its last letter was not to meet the offer as submitted by the defendants, but to submit in its stead a counter offer which disregarded entirely the provision, insisted upon by the defendants, that the manufacturer should still be making the machines, suggest a meeting to definitely settle the matter, and also add a provision that the defendants should pay one-half of the purchase price of the plant in cash at the time of the order and before receiving a bill of sale. An acceptance of an offer, in order to effect a contract between the parties, must conform exactly with the terms of the offer. In the words of Mr. Justice BURR, in *Eustathopoulo* v. *Gillespie* (218 App. Div. 179, 186): " * * * To constitute a contract an offer must be accepted in its exact terms.

" In *Mahar* v. *Compton* (18 App. Div. 536) the court states the rule as follows (p. 540): ' It is well settled, however, that in order to establish a legal contract through the medium of correspondence, it must be made to appear that there was not only a plain, unequivocal offer, but that the acceptance of such an offer was equally plain and free from ambiguity. In other words, there must have been an exact meeting of the minds of the contracting parties in respect to every detail of the proposed contract, and if the precise thing offered was not accepted; or if the acceptance was in any manner qualified by conditions or reservations, however slight they may have been, the universal rule seems to be that no valid contract is thereby established, but that such a modified or qualified acceptance must rather be treated as a rejection of the offer.' "

The respondent urges that any lack of meeting of the minds of the parties was subsequently overcome by a letter which the defendants wrote to the plaintiff, containing (according to the respondent) an admission that such a meeting of the minds had been had. This letter is as follows:

" We are about to send you a check for one-half of the purchase price of the refrigerating machine — the one we looked at recently, but find it is attached, therefore we will be obliged to drop this matter entirely, as we do not want to get into any litigation or wait for a settlement of any difficulty regarding this machine.

" We are sorry but we must take some action immediately, therefore we will have to forget it and we will send you a check for one-half of your expense to Detroit if you will send us a statement of the account, and oblige."

There are two answers to this contention of the respondent. In the first place, the letter upon its face shows only a contemplated acceptance, namely, that the defendants were about to accept and send a check, and then did not do so. Furthermore, even regarded

as an admission by the defendants that they considered there was a contract between the parties, yet when the exhibits submitted by the plaintiff as constituting the contract fail to show that there was a meeting of the minds and hence a contract, the plaintiff cannot, in lieu of the said writings, rely upon a mere admission by the defendants that a contract existed. (*Eustathopoulo* v. *Gillespie, supra; Poel* v. *Brunswick-Balke-Collender Co.*, 216 N. Y. 310.) As was said by Judge SEABURY in *Poel* v. *Brunswick-Balke-Collender Co. (supra):* " There was no contract because, as has been shown, the plaintiffs did not accept the counter offer of the defendant expressed in its letter of April 6th. That being so, this letter from the defendant some months later * * * cannot supply the omission of the plaintiffs to accept the offer which the defendant's salesman made." Also, in *Nundy* v. *Matthews* (34 Hun, 74, 79), it was said: " Even if both parties supposed that a binding contract existed between them, it was of no importance unless in fact such an agreement had actually been made."

It follows that the order appealed from should be reversed, with ten dollars costs and disbursements, and the motion to dismiss the complaint granted, with ten dollars costs.

DOWLING, P. J., McAVOY and O'MALLEY, JJ., concur; MERRELL, J., dissents.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.