NATHAN ZUCKER, Trading as EASTERN YARN COMPANY, Plaintiff, v. PERKINS HOSIERY MILLS, Defendant.

City Court of New York, New York County, April 22, 1931.

*Emanuel Morganlander,* for the plaintiff.

*Nevius, Brett & Kellogg,* for the defendant.

RYAN, J. This action is brought to recover damages alleged to have been sustained by plaintiff because of the failure to deliver goods ordered to be manufactured by the defendant.

Plaintiff's place of business is in Philadelphia, Pa. The defendant's mill was located at Columbus, Ga., and employed one Wood as a salesman, with an office in New York city. On July 1, 1927, plaintiff wrote to defendant at Columbus, Ga., inquiring about merchandise in certain colors, prices, deliveries, etc. In reply plaintiff was advised to get in touch with Wood, who was described as being in charge of the yarn department in New York city, for prices and deliveries. This the plaintiff did, and the question of his credit was raised. Thereafter an order (Exhibit 3) was prepared on the form used by the defendant and signed by the plaintiff under date of July 25, 1927, calling for a certain quantity, colorings, price, terms two per cent cones, two per cent — thirty days — deliveries 2,000 pounds, weekly; and containing opposite word " Remarks " the following: " Subject to mill acceptance. Mr. Zucker agrees to anticipate payment of invoices, so that outstandings will be kept within credit limits as may be assigned by the mill." On July 25, 1927, Wood forwarded to the defendant credit information and the credit references supplied by the plaintiff (Exhibit 4). On July 28, 1927, the president of defendant wrote to the plaintiff at Philadelphia stating that " we have written some of the references you have furnished * * * as our credit department wishes to go thru their usual investigation before opening up a new account. We * * * are anxious to get our yarns before you in hopes of furnishing you with a reliable source

of supply. That is why we accepted what we consider to be the low price of 40½c on the 16/2 in order to insure a beginning with you if credit is approved. We hope that it will be and will report to Mr. Wood just as soon as our credit department has had time to receive replies and pass on same." A few days later defendant's president wrote Wood (Exhibit B) that "your order for the 10 M pounds, our No. 1331 is as yet not entered as your letter of the 25th * * * is not sufficiently conclusive * * * to pass credit. * * * We are holding this matter in abeyance until credit is passed." That letter was followed by a second communication, dated August 9, 1927, from the president of the defendant to Wood (Exhibit 2) giving him a report of the inquiries and saying: "We have their report as rendered by Dun's and consider it too small to warrant entering a contract for 10 M pounds. If they [plaintiff] will remit check as promised for each shipment we would ship continuously as long as checks received for previous shipments but without any discount for prompt payment holding the credit line down to not over 2c [cases] of yarn at a time. Please advise." Under date of August 15, 1927, Wood wrote the plaintiff (Exhibit 4), saying: "The mill has been investigating the references supplied. They will enter the order if you will remit check as promised for each shipment as soon as the invoice is received. They would ship continuously, as long as checks are received for previous delivery without allowing discount for anticipation and holding credit lines down to two cases at a time. This means they are willing to ship two cases 2% cones 2% discount and on receipt of your check to cover will ship you two additional cases. * * * We trust this will be satisfactory to you, and awaiting your comments." A postscript contained in the letter informed the plaintiff, "If you want larger shipments, and are in a position to do so, we suggest you might care to send them a check in advance, sufficient to cover, say two cases of yarn, which would warrant the mill shipping you four, as we see it * * *." (One case of yarn contained approximately 360 pounds.) Then follows a letter from Wood to the plaintiff, dated August 22, 1927 (Exhibit 5), wherein it is stated: "It has been almost a week since we wrote you concerning your contract for 16-2 ply and we wish you would advise us at once. * * * Please let us hear from you promptly." The following day plaintiff sent a telegram to the defendant at Columbus, Ga. (Exhibit 6), reading: "Mailing you check commence shipment on contract order." That communication by its own terms, as I take it, refers to the original order (Exhibit 3), and in view of the correspondence that had passed between the parties it surely cannot be considered as a meeting of the minds of the parties to the contract,

which is the subject-matter of this action. Nor can that telegram be considered as an acceptance by the plaintiff of any counter proposition as is urged by him, *a fortiori*, no amount is mentioned, nor is it clear as to the number of cases desired or the terms upon which deliveries were to be made.

Exhibit 9 is a letter written by Wood to plaintiff under date of August 26, 1927, in which he informed plaintiff that the defendant " never did enter the contract for the 16-2 ply. Some time elapsed between their advising that they would extend credit to two cases and your advising that they would be satisfactory to you. Not having heard one way or the other the mill concluded that you were not interested on such a basis and they did nothing further with the order * * *. You thought you were covered on the yarn but the mill thought you did not want it. We suggest * * * we compromise to permit the mill to enter a portion of the order which seems to be fair to all parties. Would appreciate your comments along this line."

Considering the evidence adduced at the trial in connection with the correspondence in evidence, no meeting of minds can be spelled out. Among other exhibits received in evidence urged by plaintiff as tending to make the agreement binding are numbers 12 and 13. Exhibit 13 is a letter by Woods to his employer, the defendant in this case, in which the former refers to a contract between the plaintiff and the defendant. What Wood's construction of former correspondence may have been would not necessarily make a binding contract between the plaintiff and the defendant, for in the last analysis plaintiff's credit was to be passed by a " mill acceptance " and not by Wood. Nor does the fact that Wood was under the impression that a contract had been entered into between the plaintiff and defendant make it such unless such an agreement was actually made. For as was said in *Machinery U. Co.* v. *Fry* (224 App. Div. 392), " Even if both parties supposed that a binding contract existed between them, it was of no importance unless in fact such an agreement had actually been made."

It is difficult for me to conclude after a careful reading of the correspondence received in evidence and a like consideration of the evidence adduced at the trial up to this point that there had been that meeting of the minds of the parties necessary to say the contract sued upon is enforcible. Proceeding further, therefore, and taking plaintiff's suggestion with respect to the letters of August ninth (Exhibit 12) and of August twenty-sixth (Exhibit 13), that Wood was expressly authorized to inform plaintiff of the " mill acceptance " of credit, plaintiff stresses the point that the words " Please advise " are addressed to Wood to so advise the plaintiff.

As I read that expression, the request applies to Wood to advise the president at Columbus (the defendant), and when plaintiff relies on that exhibit he must likewise fail. In support of his argument to sustain the verdict, plaintiff contends that the order signed by him (Exhibit 3), the letter of Wood, the New York agent of defendant (Exhibit 4), together with plaintiff's telegram to the defendant (Exhibit 6), constitute the offer, counter proposition and acceptance and thus establish the contract between the parties upon which this action is founded. With that proposition I am not in accord, even reading in addition to these the letter from the defendant to the plaintiff (Exhibit 12) and likewise considering the testimony adduced at the trial. The plaintiff fails to point out any " mill acceptance " of the original order which was signed by him, whether from the evidence or the exhibits. Nor does a reading of the writings referred to spell out a contract complete in all its terms. Surely there is not that complete meeting of the minds of the contracting parties as to the necessary details of a contract of the kind under consideration involving quantity, shipments, terms, credit limits, payments, etc., to bring it within the rule laid down in the case of *Mahar* v. *Compton* (18 App. Div. 536) where the court said: " It is well settled, however, that in order to establish a legal contract through the medium of correspondence, it must be made to appear that there was not only a plain, unequivocal offer, but that the acceptance of such an offer was equally plain and free from ambiguity. In other words, there must have been an exact meeting of the minds of the contracting parties in respect to every detail of the proposed contract, and if the precise thing offered was not accepted; or if the acceptance was in any manner qualified by conditions or reservations, however slight they may have been, the universal rule seems to be that no valid contract is thereby established, but that such a modified or qualified acceptance must rather be treated as a rejection of the offer." (See, also, *Poel* v. *Brunswick-Balke-Collender Co.*, 216 N. Y. 310; *St. Regis Paper Co.* v. *Hubbs & H. P. Co.*, 235 id. 30.)

Defendant's motion to set aside the verdict should be granted and a new trial ordered. Exception to plaintiff. Settle order on two days' notice.