## ELISCU v. FIBER.

### No. 9095.

Circuit Court of Appeals, Third Circuit.

Argued June 19, 1946.

Decided Aug. 21, 1946.

Walter J. Bilder, of Newark, N. J. (Bilder, Bilder & Kaufman, of Newark, N. J., on the brief), for appellants.

Emanuel P. Scheck, of Newark, N. J. (Osborne, Cornish & Scheck, of Newark, N. J., on the brief), for appellee.

Before BIGGS, McLAUGHLIN, and O'CONNELL, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is a contract action based on diversity of citizenship. Plaintiffs are New York wholesalers of various merchandise including fastening devices for women's garments. Defendant, a resident of and in business in New Jersey, controlled the pro-

duction of a particular type of such device. On January 20 or 21, 1943, these parties entered into a written contract providing that Eliscu purchase from Fiber, in the period of three months starting February 1, 1943, not less than 100,000 yards of certain button placket tapes with approximately 8,000 yards to be delivered each week. An option to Eliscu was set out as follows:

"7. Upon condition that Eliscu faithfully and promptly performs its obligations during the aforesaid period of three months or until the exercise of the option hereinafter mentioned, Eliscu will have the option for a period of three months from the date hereof to do and have the following:

"a. For a period of nine months after the expiration of the three months period above mentioned the exclusive right to purchase Fiber's production of these plackets, without buttons, for sale and distribution within the territorial limits of the United States, reserving to Fiber the right, however, to sell the eylet tapes (the tape containing the button-holes) to others, on condition that Eliscu will purchase and accept delivery of a minimum of 80,000 yards of the Fiber product each calendar month at 14 cents per yard, and pay promptly for the same net 10 days E.O.M., not less than 1,000 yards to a color, credit subject to approval by a New York City commercial factor.

*   *   *   *   *   *

"c. If Eliscu desire to exercise this option they will so advise Fiber by registered mail addressed to her at 640 Broadway, Paterson, New Jersey, not later than April 20, 1943."

On March 27, 1943 Fiber had delivered to Eliscu only about half the contract quantity of plackets which should have been furnished by that time. On that date plaintiffs sent a registered letter to the defendants which is the crux of this litigation. It reads in part:

"In accordance with the terms and conditions provided in a certain agreement entered into between us in writing, dated January 21, 1943, which terms and conditions we have fully and faithfully performed on our part, we hereby serve notice that we are exercising the Option contained in Paragraph 7, a-b and c of said agreement said Option to take effect the 1st day of April, 1943, as follows:

"a. We hereby agree to purchase a minimum quantity of 80,000 yards of the Fiber product, not less than 1000 yards to a color, each calendar month for a period of nine months from the date said Option goes into effect, and to pay for same at the rate of 14¢ per yard, net, 10 days E.O.M."

On April 2, 1943, there was a conference at the office of defendant's then attorney, between Samuel Eliscu, the defendant's husband and her attorney. Eliscu complained about the irregularity of defendant's deliveries. The defendant through her husband demanded a higher price. Defendant's attorney on cross examination as to what changes in the contract were discussed at that meeting and mentioning that price was one of them, explained what he meant by this as "The price at which the goods were to be sold to Mr. Eliscu during the nine-months period." After the April second talk the defendant made additional manufacturing arrangements which "gave us more production, and then I would have been able to take care of the 80,000 yards per month. I had made all preparations to do that." On April 20, 1943, plaintiffs wrote defendant another letter which reads:

"Will you please advise by return of mail when we are to expect delivery of our orders February 17th, March 1st, 6th and 25th which, according, to our contract, were supposed to be delivered at the rate of 8,000 yards per week. To-date, we have received a total of 39,780 yards, whereas according to our contract we should have received 72,000 yards.

"Under Paragraph 7 of our contract of the 21st of January, we elected to exercise our option, which we performed by sending you our letter dated March 27, 1943. Under said option, you are required to cease selling the Fiber button placket without buttons to anyone but Eliscu & Co., and you are further required to turn over your entire stock to us and bill and deliver

all of Fiber button plackets manufactured after the above mentioned date."

Defendant replied to this on April 21, 1943 claiming that it had been mutually agreed at the April second conference to cancel the contract. Plaintiffs answered April 24, 1943, insisting on performance of the agreement.

Plaintiffs thereafter sued the defendant alleging exercise of the option. Defendant denied this in her answer. The matter was tried without a jury on September 26 and 27, 1945. Plaintiffs' opening claimed exercise of the option by their letter of March 27, 1943. Defendant's opening especially emphasized that the option had not been properly exercised first because the letter of March 27th stated that it was to take effect April 1st and second because plaintiffs had insisted on the additional condition of a performance bond. No testimony was offered on behalf of the plaintiffs to explain the language in their March 27th letter, reading " * * * said Option to take effect the 1st day of April 1943." At the end of the whole case, the Court granted the defense motion to dismiss plaintiff's claim on the ground that the option had not been properly exercised.

■ Under the facts that question is one of New York law. Dacosta v. Davis, 24 N.J.L. 319, 328; Roubicek v. Haddad, 67 N.J.L. 522, 524, 51 A. 938. The Uniform Judicial Notice of Foreign Law Act, N.J.S.A. 2:98–28 et seq., makes that law judicially noticeable. And see Franzen v. Equitable Life Assurance Society, 130 N.J. L. 457, 460, 33 A.2d 599.

■ "A binding option is a contract, but it is also an offer which, when accepted, will create another contract." Heller v. Pope, 250 N. Y. 132, 135, 164 N.E. 881, 882. New York is in accord with the general law that an offer must be accepted according to its terms. The principle is outlined in the basic case of Mahar v. Compton, 1897, 18 App.Div. 536, 45 N.Y.S. 1126, at page 1128, where the court said:

"It is well settled, however, that, in order to establish a legal contract through the medium of correspondence, it must be made to appear that there was, not only a plain, unequivocal offer, but that the acceptance of such an offer was equally plain and free from ambiguity. In other words, there must have been an exact meeting of the minds of the contracting parties in respect to every detail of the proposed contract; and if the precise thing offered was not accepted, or if the acceptance was in any manner qualified by conditions or reservations, however slight they may have been, the universal rule seems to be that no valid contract is thereby established, but that such a modified or qualified acceptance must rather be treated as a rejection of the offer."

It is suggested on behalf of the appellants that it is entirely reasonable and sensible to account for the April 1st clause as being the product of pure and obvious mistake. In line with this it is stressed that the first part of the opening paragraph of the March 27th communication states that in accordance with the agreement of "January 21, 1943" plaintiffs are exercising "the Option contained in Paragraph 7, a-b and c of said agreement * * *." This is urged as acceptance of the option strictly within its terms. And so it would be if there were nothing further. But immediately following and continuing the same sentence is the phrase "said Option to take effect the 1st day of April 1943, as follows:" Still in the same sentence Eliscu in sub paragraph *a* agrees to purchase certain amounts of the Fiber product "for a period of nine months' from the date *the said Option goes into effect* * * *." (Emphasis supplied). This carefully worded language incorporates the terms of the option as they appear in the January contract but specifically refers to the date it goes into effect which is sharply stated by the preceding part of the letter to be April 1st. The April 20th letter points this up further for while it reads that "Under paragraph 7 of our contract of the 21st of January we elected to exercise our option * * *," it proceeds to say "which we performed by sending you our letter dated March 27, 1943."

Appellants say that the two parts of the first paragraph of the March 27th letter are contradictory. That is self-evident, but what is not self-evident is that they

were not so intended. Appellants say too that if the letter was meant as a counter-offer advancing the performance date of the option from May first to April first, it would have plainly indicated that a reply was expected. It is entirely true that the letter does not request an answer, but again, there is nothing to show that this was not intentional unless of course the original April first reference was inadvertent.

Appellants then contend that in view of the factual situation, Fiber being far short in the first three months deliveries, Eliscu had nothing to gain by moving up the option time. Plaintiffs might or might not have been helped in obtaining larger quantities by such method but they certainly would have thus received a month earlier exclusive rights to appellee's output of this scarce much in demand product procurable only from Fiber.

Finally on this branch of the controversy appellants assert that the defendant understood the letter of March 27th as picking up the option under the January agreement. They refer to the attitude of the defendant and her representatives at the April second meeting where the latter made no mention of any fault with the acceptance of the option and where the whole trend of the talk had to do with quantities, price and, according to defendant's version, where plaintiffs agreed to cancel the contract on being reimbursed for expenses. Admittedly no deliveries were ever made by the defendant under the option. Following the April second meeting there were telephone calls between the parties, and then came the April 20th letter of the plaintiffs. The defendant answered this the day it was received, April 21, 1943, saying that both sides had agreed to cancel the contract on April second and therefore the option had been waived. Plaintiffs' reply insisted on performance. From all this we do not see that the defendant's acts and conduct on April second vitally affect the present issue. Concededly she did nothing then to cause plaintiffs to believe she questioned their acceptance. However she did nothing in performance of the option and claimed that at the same conference she and Eliscu mutually agreed to cancel the contract. Thereafter when plaintiffs repeated their demand for performance of the option the defendant promptly replied that the option had been waived by the cancellation of the main agreement.

New York law holds with the general principle that if there are two antagonistic clauses in a contract the first will stand and the latter will be rejected. Pittsburgh & S. R. Co. v. Central Trust Co., 156 App.Div. 182, 141 N.Y.S. 66. That doctrine is not applicable here because the option had not ripened into a new contract. The insertion of the April first date was a material change in its terms and acceptance on that basis was no acceptance at all. Fitzgerald v. First National Bank, 8 Cir., 114 F. 474, cited by the appellants concerned an already existing contract. Newspaper Readers Service, Inc., v. Cannonsburg Pottery Co., D.C.W. D.Pa.1943, 52 F.Supp. 341, referred to by appellee in answer to appellants' present contention was reversed by this Court in 146 F.2d 963. A Massachusetts contract was there in dispute. The offer was to ship goods beginning on a day certain; the acceptance was for shipments to commence two weeks after shipping instructions were sent. The issue was governed by Massachusetts law. So interpreted and under its own facts we found that the differences were not so material as to alter the terms of the contract. Our attention has not been directed to any New York decision with circumstances similar to the instant suit nor has our independent search disclosed such a case. From the facts we are forced to conclude that the difference between the option and its acceptance was material though under the New York rule it is at least doubtful that such difference must be material.

Plaintiffs next argue that defendant's conduct following the letter of March 27th estops her from contesting the option as exercised and that the April 20th letter itself constituted an assertion of the option as detailed in the January contract. Both these propositions have been sufficiently covered in the above discussion.

140

Their remaining contention is that if their letter of March 27th was not an exercise of the option but a counter-offer, defendant accepted that counter-offer. This was not pleaded nor was it before the District Court where the question was solely as to the acceptance of the option in the January agreement. Aside from the state of the pleadings, since the counter-offer question was not presented in the court below, it is not before us on this appeal. This theory of counter-offer may well have been the reason for Eliscu not taking the stand and explaining the April first clause. In any event from a careful examination of the entire record and as shown in the above outline of the evidence, the latter does not justify the conclusion that the defendant accepted such alleged counter-offer.

There is no dispute as to defendant's verdict on her counterclaim.

Affirmed.

O'CONNELL, Circuit Judge, participated in the consideration and decision of this case but was unable to collaborate in the preparation of the opinion.