## DACOSTA AND DAVIS v. DAVIS AND HATCH.

1. In a suit against two defendants on a joint contract, if the infancy of one be proved on the trial of the issue of non assumpsit, the defendant is not entitled to judgment of nonsuit, but the plaintiff may enter a *nolle prosequi* as to the infant, and proceed against the other defendant.

2. A contract entered into in one state concerning personal property, when the personal property is situate and the contract to be performed in another state, must be made according to the law of the state where the contract is entered into, not according to the law of the state of performance: the *lex loci contractus* governs the form and solemnities of the contract in such case. A contract made in New Jersey for the sale of goods of the value of thirty dollars, situate and to be delivered in Philadelphia, must comply with the requisitions of the New Jersey statute of frauds, or it will be void.

Case certified from Camden Circuit Court.

This was an action of assumpsit, brought by the plaintiffs, partners, against Davis and Hatch, of the city of Camden, for damages for the non performance of a contract for the sale of a lot of spirits of turpentine, stored in the warehouse of Heron & Martin, in the city of Philadelphia. The contract, as stated in the first count, was for the sale of " a large quantity of goods, to wit, fifty barrels of spirits of turpentine, at the rate or price of thirty-five cents for each and every gallon thereof, to be delivered by the said defendants to the said plaintiffs on the day then next following, at the storehouse of Heron & Martin, in the city of Philadelphia, and to be paid for," &c. The second and third counts are substantially the same, varying only as to the time of delivery. The fourth count was in *indebitatus assumpsit* for money received for the use of the plaintiffs.

The lot, at the time of the sale, was supposed to be about fifty barrels, but was sold at so much per gallon, be the same more or less. It was alleged, by the defendants, that the same lot had been previously sold to another party, by one of the defendants, in ignorance of this agreement. A verdict was found for the plaintiffs, subject to the opinion of the court upon the points reserved, and which were certified by the judge who tried the cause to the Supreme Court, for its opinion. The points will sufficiently appear in arguments of counsel and the opinion of the court.

The case was argued before the CHIEF JUSTICE and Justices OGDEN and POTTS, by Mr. *Dudley* and Mr. *Carpenter,* for defendants, and Mr. *Browning* for plaintiffs.

*Dudley* and *Carpenter,* for defendants.

1. On the trial, it appeared that William Davis, one of the defendants, was a minor. The plaintiffs, notwithstanding objection made, were permitted to enter a *nolle prosequi* as to him, and to proceed against the other defendant. This, though now the practice in New York and Massachusetts, (5 *John.* 160; 1 *Pick.* 500,) is contrary to the rule of the common law.

The distinction acted upon in England, and which is supposed to be the rule here, is this: that in case an original joint contract, and all are sued, but bankruptcy or other personal discharge is pleaded by one, the plaintiff may enter a *nolle prosequi* as to him, and proceed against the others. The plea in such case admits the contract, but sets up a *personal discharge.* *Noke* v. *Chiswell,* 1 *Wilson* 90; *Com.* v. *Nesbitt,* 2 *Barr.* 16. But where one of the defendants pleads a several plea containing a matter of original personal disability, the plaintiff cannot enter a *nolle prosequi,* for the plea shows that there never was a joint contract. 3 *Esp.* 76; 5 *Ib.* 47; 1 *Saund.* 207, note 2; *also note of editors, 5th and 6th ed.* (*Phil.* 1846.)

2. There was a variance between the declaration and the proof. The declaration does not state a bargain and sale of any particular lot. The language is general, and the contract, as stated, would have been satisfied by the delivery of the quantity, no matter by whom manufactured or from whence produced. The proof was unequivocal of a sale of a specific lot, supposed to be fifty barrels, but which turned out to be only forty-two barrels. In the sale of a specific lot, the quantity being stated under a verdict, variance in this particular is immaterial. But in the sale of fifty barrels generally, the quantity is a material part of the contract, which shows the importance of this objection. 13 *East* 410; 8 *Taunt.* 107; 7 *Cranch* 408; 1 *Chit. P.* 271, 273, *note,* and 275, (*ed.* 1828.)

3. The place of delivery under the contract was to be in

Dacosta and Davis v. Davis and Hatch.

Philadelphia, the contract being for the sale of a specific lot of spirits of turpentine stored in a warehouse in that city, and therefore to be there delivered, but the contract was made in New Jersey. This raises an important question.

It seems that the provision in the statute of frauds of New Jersey, (*Rev. Stat.* 504, § 15, copied from 29 *Car.* 2, *ch.* 3, § 17,) that no contract for the sale of goods, &c., for the price of thirty dollars or upwards, shall be good, unless note in writing, &c., does not exist in Pennsylvania. To the objection, that the contract was by parol merely, it was answered, that it was to be performed in Pennsylvania, where no note or memorandum in writing is necessary.

The principle relied on by the plaintiffs applies only to the construction and effect of the contract, and not to the solemnities necessary for its creation, a distinction which will explain some of the apparent contradictions which appear in the books. 2 *Kent* 459, &c.; *Burge on Surety* 100, &c.; *Story on Conflict of Laws*, § 233, 240; *Ib.* § 262 and *note*; *Ib.* § 298, 300 to 301, *a*, &c., and authorities cited.

Thus the law of the place of performance will rule as to the rate of interest, the currency in which payment is to be made, or the mode of measurement or weight. 2 *Kent* 460; *Story's Conflict of Laws*, § 291; *Healey* v. *Gorman*, 3 *Green* 328; *Cooper* v. *Earl of Waldegrave*, 2 *Beav.* 282; *Burge on Surety* 85, 86, &c.

But so far as the validity or invalidity of the contract depends on the forms and solemnities under which made, the contract is governed by the law of the place where made. Thus, if void here, because made on Sunday, or in a particular place, as in a prison, it would be void in whatever country it should be sought to be enforced. *Burge* 101.

Undoubtedly the statute of frauds of this state, which prescribes that contracts for the sale of goods above the price of thirty dollars must be in writing, respects the form of the contract. It defines no terms; it in no way affects the interpretation of the contract; it simply prescribes certain formalities as necessary to bind the parties.

In *Acebal* v. *Levy*, 10 *Bingh.* 376, in case of a contract made in Spain, to be performed in England, it seems to have been assumed that the statute applied, but the court decided that there was a sufficient note in writing. But the point was not presented to the court, deserves no consideration, and does not seem to have occurred to the counsel. The case is referred to by Mr. Justice Story, in a way that shows that he held a different view. *Story's Conflict of Laws*, § 262 and *note*.

In *Vidal* v. *Thompson*, 11 *Martin* 23, (cited in *Story's Conflict of Laws*, § 318,) the Supreme Court of Louisiana held expressly, that an instrument, as to its form and the formalities attending its execution, must be tested by the law of the place where made.

There are some apparently contradictory decisions on the subject of stamps, but in none is the principle decided in *Vidal* v. *Thompson* overruled or doubted. The cases alluded to are simply placed on a different ground, some courts holding that they will not notice the stamp laws of other countries, regarding them as mere revenue laws. 3 *Camp.* 166 ; 1 *John.* 94; 2 *Russ. Ch. R.* 351 ; *Story's Conflict of Laws*, § 260 and *note*.

Suppose a contract to be made in New Jersey, to be performed in France, in China, or in some other foreign country, is it necessary here for the validity of the contract that it should be made under the solemnities required by the law of such foreign country? *Weatherby* v. *Covington*, 3 *Strobhart* 27, has no application.

There can be no recovery under the fourth count, as suggested on the opposite side, for the property in the goods was never changed.

*Browning*, contra.

OGDEN, J.   The case certified from the Circuit Court of Camden to this court, by his Honor Judge Elmer, presents three questions for their advice.

*First.* Whether, in an action against joint contractors on a simple contract, upon proof, by the defendants, that one of them was a minor when the alleged contract was made, the

court can permit a *nolle prosequi* to be entered as to the minor, and proceed to judgment against the other or others?

*Second.* Whether the contract for the sale of the property in question in this suit falls within the purview of the statute of frauds of this state? and

*Third.* Whether the parol proofs made in the case (if admissible) sustained the allegations of any count in the declaration?

The first question raises this proposition, whether in an action against two or more joint debtors, if one of them establishes a defence which is personal to himself, and does not go to the *action of the writ* nor to the discharge of any other defendant, the plaintiff must be nonsuited, and be required to commence a new action.

In this suit, the counsel for the defence offered to prove, upon the general issue, that William H. Davis, one of the defendants, at the time of the making of the contract in question, was a minor under the age of twenty-one years, whereupon the counsel for the plaintiffs asked and obtained leave from the court to enter a *nolle prosequi* as to him, and to proceed against the other defendant.

If the ruling of the judge does not conflict with any well fixed principle of law, it certainly establishes a convenient and economical practice.

It cannot be successfully contended that because one of several joint contractors has a defence entirely personal, such as infancy, lunacy, or bankruptcy, all the parties are absolved from the obligation. Nor can it be maintained that a suit should be brought in the first instance against all, excepting those under such disability to contract. In such an action, the defendants might plead in abatement, that another person was a joint promisor, and the plaintiff would then fail in the proceeding or be compelled to disparage his own contract by replying the infancy of the other promisor, which course would certainly be unusual, if not questionable. The effect of it would be to permit a plaintiff to take advantage of the infancy of one of the parties to a contract for the express purpose of enforcing it against the others. Such a procedure

would be unjust to the other parties to the contract, and would violate a settled principle, that the defence of infancy is a personal privilege, of which the minor *alone* can take advantage.

But suppose that the plaintiff does not know that one of the contractors is a minor, and prosecutes all, the defence is nevertheless available to the infant, and the first intimation of it which the plaintiff receives may be upon the trial. If the fact of minority is established there, the right of recovery against him is destroyed; but what good reason can he put forth to require the plaintiff to submit to a nonsuit, and to commence a new action against the others? The rights of the minor could be protected without it; and the rule that in a joint suit the plaintiff must prove a joint contract, would not be invaded.

Some writers on pleadings have held that a *nolle prosequi* cannot be allowed in such a case; but there seems to be no good reason, founded either upon authority or in principle, for adopting their doctrine.

In *Hartness and another* v. *Thompson and wife and Nelson,* 5 *Johns.* 160, substantially the same question came before the Supreme Court of the state of New York, in an action upon a joint and several promissory note, made by Mrs. Thompson, when she was a *feme sole,* and by Nelson *non assumpsit* was pleaded, and at the trial the infancy of Nelson was proved by the defence. A nonsuit was then moved for and refused, and the jury, under the directions of the court, found against Thompson and wife, and in favor of Nelson. Upon a motion to set aside the verdict, the court (by Vanness, J.) sustained the ruling at the circuit, and ordered judgment to be taken upon the verdict, it being stated that any seeming inconsistency on the record might be avoided by entering therein proper suggestions.

In 1 *Pick.* 500, *Woodward* v. *A. W. Newhall and H. Newhall,* upon the proof of the infancy of one of the defendants at the time of making the contract, Wilde, J., allowed a *nolle prosequi* to be entered against him, and a verdict to pass against the other, subject to the opinion of the whole

court. Upon a review of the case, Parker, C. J., after examining the authorities bearing upon the matter, sustained the verdict. He remarked, that he had seen "no binding authorities which prevented the court from adopting a course, as a matter of practice, which could do no possible injury to one of the parties, and would save the other from expense and inconvenience."

My opinion upon the first question is, that the Circuit Court of Camden ruled correctly in refusing the nonsuit, and that they should be advised not to grant a new trial upon that ground.

The second question opens a wider field for interesting inquiry.

The action is founded upon an alleged contract made by the defendants for the sale of a quantity of turpentine. The plaintiffs were merchants in the city of Philadelphia; the defendants were merchants in the city of Camden, in the state of New Jersey, having turpentine stored with Heron & Martin, in Philadelphia. The plaintiffs, in one count, declare, that on the 11th of November, 1850, at Camden, they bargained with the defendants to buy, and the defendants then sold to them, a large quantity of turpentine, at a given price, to be delivered to them on the day following, at the store house of Heron & Martin, in Philadelphia, and to be paid for on delivery; and for a breach, they set forth that the defendants afterwards refused to deliver, to their damage, &c.

Another count sets out that the delivery was to be made whenever the defendants should be requested, &c., and states that a request to deliver was made at Heron & Martin's store house, in Philadelphia.

A third count sets out that the delivery was to be made at Heron & Martin's, in Philadelphia, within a reasonable time.

*Non assumpsit* was pleaded to the declaration, and a *similiter* added.

The plaintiffs, to support the issue on their part, called Hatch, one of the defendants, to prove *orally* the contract for the sale. This was objected to by the defence, because the

contract was declared upon as for the sale of merchandise beyond the price of thirty dollars. None of the turpentine was pretended to have been received by the purchasers, nor was any thing alleged to have been paid in earnest to bind the bargain or in part payment. The judge admitted the evidence, reserving the question of its legality for further consideration. Upon the *oral* proofs, made by Hatch and other witnesses, the plaintiffs rested their case; and the defendants moved for a nonsuit, because no note or memorandum in writing of the bargain, made and signed by the defendants, or either of them, or any agent of theirs, was produced in evidence. The motion was denied under the like reservation, and, after the introduction of some testimony upon the part of the defendants, a *nolle prosequi* was entered, as to the defendant Davis, and a verdict rendered against Hatch for $130 damages. A rule was immediately granted for the plaintiffs to show cause why the verdict should not be set aside; and the parties were directed by the court to argue the questions reserved before the Supreme Court, upon the case certified to it by the judge, presenting the points which arose involving matters of doubt and difficulty.

The simple point presented on this branch is, whether the statute of frauds of New Jersey prescribes the proof necessary to establish the contract set up by the plaintiffs.

In the fifteenth section of the act for the prevention of frauds and perjuries, (*Rev. Stat.* 504) it is enacted that " no contract for the sale of any goods, wares, or merchandise, for the price of thirty dollars or upwards, shall be allowed to be good, except the buyer shall accept a part of the goods so sold, and actually receive the same, or give something in earnest to bind the bargain or in part of payment, or that some note or memorandum in writing of the said bargain be made and signed by the parties to be charged by such contract, or their agents, thereunto lawfully authorized."

In the state of Pennsylvania there is no such statute, and the ground taken by the plaintiffs is, that as the subject matter of the sale was in Philadelphia, and the delivery and payment were to be made there, the place of performance was

fixed in Pennsylvania, and that proof according to the laws of that state should be held sufficient to establish the contract.

Whatever may be the rule governing contracts made in one state respecting immovable property in another state, when the laws of the two require different solemnities to give validity to sales thereof, or contracts made in one state, and consummated and recognised by delivery and enjoyment of the subject matter of it in another state, having different laws as to tests of validity of sales, it is clear that personal property or merchandise has no *locus sitœ*, but follows the person of the owner; and the generally recognised rule is, that his alienation of it is governed by the law of his domicil or of the place where the sale is made. Such contracts should have in any other state the same interpretations, binding force, and validity. The *lex loci contractus* acts upon the *rights* of the parties, though the remedy may be otherwise controlled. Had the turpentine in question been stored in Camden, and the agreement of the parties have been that it should be delivered there, the laws of New Jersey, admittedly, would have governed in deciding upon the validity or invalidity of the contract for the sale, even if the suit had been brought in another state. If the contract for the sale was good in New Jersey, it would have been good in Pennsylvania; and it is a consequence, that if void in New Jersey, it must be void in Pennsylvania and every where else. It would be doing violence to well established principles in jurisprudence to hold that a contract respecting chattels, void for want of proper authenticity in the place where made, should be valid under any circumstances within other territorial limits.

Admitting the ground taken by the plaintiffs, that the *lex loci contractus* is in some measure affected by the law of the place where the contract is to be performed, the principle of that rule does not apply to the point in the present case. It may relate to the rate of interest recoverable upon a class of such contracts, but not to the essence and vitality of the contracts themselves.

*Burge on Sureties* 100: "Whatever formality or ceremony, either as to time, place, or manner of making the contract, or

as to its form, as whether by parol or in writing, which the law renders essential to the perfection and validity of the contract, and is required to be observed as a condition on which it recognises the existence of the contract, is one of the *solemnia* of it." And "the manner in which a contract is constituted is one of the *solemnia* of the contract, and its validity depends upon the *lex loci contractus*."

11 *Martin's Louisiana Rep.* 34: "Contracts are governed by the law of the country in which they are made, in every thing which relates to the mode of construing them, the meaning to be attached to the expressions used, and the nature and validity of the engagement."

The law of the place where a contract is entered into is to govern, as to every thing which concerns the proof and authenticity of the contract, and the faith which is due to it, that is to say, in all things which regard its solemnities and formalities. Cited from a foreign jurist, in *Story on Conflict of Laws,* § 240. "The performance is to be according to the law of the country where it is to take place."

In a case where a contract was made in one country for the payment of money in another country, where, by law, a stamp was required to make the contract valid, but not so where the contract was made, it was held that in such case a stamp was not necessary to give validity to the contract; that it being valid where made, it was valid elsewhere; and that the *lex loci contractus,* and not the *lex solutionis,* should control the question, the court remarked, "that an instrument, as to its form and the formalities attending its execution, must be tested by the laws of the place where it is made; but the laws and usages of the place where the obligation, of which it is evidence, is to be fulfilled, must regulate the performance." The rule is clear, that if parties mean to bind themselves, they will adopt the forms and solemnities which the *lex loci* prescribes for establishing the validity of a contract; they are the only *criteria* for testing the intention of parties.

A clearer illustration of the rule is drawn from a particular consideration of the effect of the foregoing provisions of the

Dacosta and Davis v. Davis and Hatch.

statute of frauds upon contracts to which it refers. *Story on Conflict of Laws*, § 262, says, " if such contracts made by parol (*per verba*) in a country, by whose laws they are required to be in writing, are sought to be enforced in any other country, they will be held void, exactly as they are held void in the place where they are made."

Upon the foregoing well established rules and principles, it is evident that if the turpentine had been lying in Camden, instead of Philadelphia, and was to have been there delivered, no action could have been maintained on the proof relied upon by these plaintiffs, either in the tribunals of New Jersey or of Pennsylvania.

How does the fact of the storage of the article, and the allegation that it was to be delivered and paid for in Philadelphia, bear upon the validity of the contract for the sale, or affect any of the "*solemnia*" which manifest its legal existence? That question I have not been able to solve favorably for the plaintiffs.

By the law applicable to the case, the Circuit Court should not have admitted oral testimony to prove the contract declared upon, but under the circumstances, it should have required the production of a writing, made in conformity with the provisions of the statute of New Jersey to prevent frauds and perjuries.

Upon the second point, the court should be advised that the verdict must be set aside, and the plaintiffs be nonsuited.

This conclusion obviates the necessity of my expressing any opinion upon the alleged variance between the *allegata* and the *probata*.

POTTS, J. This cause was tried at the Camden circuit, and a verdict rendered for the plaintiffs. It was a suit brought by Dacosta & Davis against Davis & Hatch, upon an alleged agreement for the sale of a quantity of spirits of turpentine.

The plaintiffs reside in Philadelphia, and the defendants in Camden, in this state.

It appeared in evidence that, on the 11th of November, 1850, one of the plaintiffs came to Camden with the view to

purchase a lot of spirits of turpentine, which the defendants then had stored at Heron & Martin's, in Philadelphia. He saw Mr. Hatch, who told him he must see his partner before fixing the price; and Mr. Hatch did see his partner, and they agreed upon the price at which they would sell. Afterwards one of the plaintiffs again came over, saw Mr. Hatch, and Hatch agreed to sell him the article, that is, " the lot stored at Heron & Martin's store in Philadelphia." *It was to be delivered in Philadelphia;* no memorandum in writing was made, and no part of the purchase money paid or goods delivered.

It turned out that before this agreement was made William Davis, Mr. Hatch's partner, had, without Hatch's knowledge, sold this lot of turpentine to another party; and the plaintiffs thereupon brought this action to recover damages sustained by the nonperformance of the agreement: and the principal question in the cause is, was this a New Jersey or a Pennsylvania contract? If the former, it is void by the provisions of the fifteenth section of the act for the prevention of frauds and perjuries (*Rev. Stat.* 504), it being a contract for the sale of goods over the value of thirty dollars, and no earnest money having been paid, or memorandum in writing made, nor any part of the goods delivered. But if it is to be considered a Pennsylvania contract, it is admitted to be binding on the parties, no such law being in force in that state.

The judge charged the jury, that if they were satisfied that, by the contract agreed on by the parties, the article contracted for was to be delivered in Philadelphia, their verdict should be for the plaintiffs, but if they believed that the contract was that the delivery should be made in Camden, or if the place of delivery was left undetermined, so that a delivery or an offer to deliver in Camden would have been a sufficient compliance with the contract, the verdict should be for the defendants; and he reserved the question of law for the advisory opinion of this court. The jury, by their verdict, found that the turpentine was, by the agreement, to be delivered in Philadelphia.

It is laid down, as the settled doctrine of public law, that

Dacosta and Davis v. Davis and Hatch.

"personal contracts are to have the same *validity*, interpretation, and obligatory force in every other country which they have in the country where they are *made*. The admission of this principle is requisite to the safe intercourse of the commercial world and to the due preservation of public and private confidence. Parties are presumed to contract in reference to the laws of the country in which the contract is made, and it is a maxim, that *locus contractus regit actum*, unless the intention of the parties to the contrary be clearly shown. 2 *Kent's Com.* 457–8. But the question here is, what is the rule where the contract is *made* in one country, and is to be *performed* in another?

Mr. Justice Story has discussed this question, and examined most of the authorities, ancient and modern, in the eighth chapter of his Commentary on the Conflict of Laws; and this examination clearly shows, I think, that the weight of authority is in favor of the proposition, that in every thing which concerns the manner, the form, the mode of entering into, the solemnities of the contract, the law of the place where it is entered into must govern ; but, as to the subject matter of the contract, the law of the place where it is to be performed must govern, and as, for example, in the case of a contract made in New Jersey, for the sale and delivery in Pennsylvania of 100 tons of coal, the question whether the contract is in such form as to be legally binding on the parties, is to be determined by our laws, the question how many pounds make a ton of coal, is to be determined by the laws of Pennsylvania.

*Boullenois* lays down the rule thus : "The law of the place where a contract is entered into is to govern as to every thing which concerns the proof and authenticity of the contract, and the faith which is due to it, that is to say, in all things which regard its solemnities and formalities." *Story's C. L.*, § 240.

Adopting the same rule, Mr. Justice Martin, in *Vidal* v *Thompson*, 11 *Martin's Rep.* 23, says : "An instrument, as to its form and the formalities attending its execution, must be tested by the laws of the place where it is made; but the laws and usages of the place where the obligation, of which it

is the evidence, is to be fulfilled, must regulate the performance."

The general principle is, that personal property has no locality or *situs*, but follows the person of the owner, and his *alienation* of it is governed by the law of his domicil or place where it was made. *Van Buskirk* v. *Hartford Fire Ins. Co.*, 14 *Conn. R.* 583; *Varnum* v. *Camp*, 1 *Green's Rep.* 329.

The *lex loci contractus* controls the nature, construction, and *validity* of the contract in relation to personal property. 2 *Kent's Com.* 454; *Thrasher* v. *Everhart*, 3 *Gill & Johnson*, 234; *Pickering* v. *Fisk*, 6 *Vermont Rep.* 102.

All foreign jurists agree that every contract must conform to the formalities and solemnities required by the *lex loci* in respect to their valid execution. 2 *Kent's Com.* 458, *note (a)*, and cases there cited.

In *Cooper* v. *Earl of Waldegrave*, 2 *Beavan* 282 the master of the rolls said : "As to contracts merely personal, I apprehend it to be a general rule, that questions relating to the *validity* and to the interpretation of a contract are to be governed by the law of the country where the contract was made."

The rules adopted in relation to the rate of interest payable on promissory notes, &c., and the days of grace to be allowed, do not contravene these principles; these are of the subject matter of the contract, and are doubtless governed by the law of the place where the note, &c., is made payable, unless in the contract itself it is otherwise stipulated. *Healy* v. *Gorman*, 3 *Green* 328; 2 *Beavan* 282; 2 *Simons* 194; 11 *Martin* 23; 1 *Peters* 25; 2 *Kent's Com.* 459, 5th edition.

The only cases cited which seem to conflict with these general principles are those of *Clegg* v. *Levy*, 3 *Campbell* 166; *Winne* v. *Jackson*, 2 *Russell* 351; and *James* v. *Catherwood*, 3 *Dowling & Ryland* 190; and these do not directly meet the question now before the court. The case in *Russell* was that of a bill filed to stay proceedings at law on a suit brought in *England* by the holder against the acceptor of a bill of exchange made and accepted in *France*, and which, in an action brought in the French courts, had been held invalid for want

of a proper French stamp; and the vice chancellor held, "that the circumstance of the bill being drawn in France, in such form that the holder could not recover on it in France, was no objection to his recovery in England." The same general doctrine was adopted in the cases in *Campbell*, and *Dowling & Ryland*, the judges holding that the courts in England could not take notice of the revenue laws of France. These cases, if they are authority at all, would apply if the plaintiffs had brought their suit against the defendants in Pennsylvania. But I think the better opinion is that expressed by Justice Story, that if, by the laws of a country, a contract is void unless it is written on stamp paper, it ought to be held void every where; for unless it be good there, it can have no obligation in any other country. *Story's C. L.*, § 260.

I am clearly of opinion, upon the whole, that the agreement or contract upon which this suit was brought, not being a binding agreement or contract under our statute, the plaintiffs cannot recover, and that judgment must be entered for the defendants. And this result renders it unnecessary to look into the other questions made in the course of the trial at the circuit.

The CHIEF JUSTICE concurred.

The Circuit Court advised to set aside the verdict.