VOTH v. HACKLEY UNION NATIONAL BANK.

BROKERS — COMMISSIONS — PARTNERSHIP — TENANCY IN COMMON —
JOINT ADVENTURES — STATUTE OF FRAUDS.

 Evidence presented in real-estate broker's action for commission
 for sale of defendants' real estate *held*, to support directed ver-
 dict for defendants on ground that property was owned by de-
 fendants individually as tenants in common and not as part-
 ners, that the sale of the property was not a joint venture,.
 and that defendant bank, as legal titleholder to an undivided
 interest and not a partner, could not bind the other titleholders,
 and there was no written memorandum binding the bank to·
 pay a commission as required by the statute of frauds (CL.
 1948, § 566.132).

Appeal from Muskegon; McDonald (Archie D.),
J., presiding. Submitted April 10, 1958. (Docket
No. 30, Calendar No. 47,318.) Decided September
10, 1958.

Action by Westleigh H. Voth against the Hackley
Union National Bank of Muskegon, trustee under the
will of Henry A. Bauknecht, deceased, Francis L.
Smith, Ruth Bauknecht McNiff, Nynah Bauknecht
and other individual defendants, and Alexis J..
Rogoski, executor and trustee under the will of Paul
J. Schlossman, deceased, for real-estate broker's
commission. Judgment for defendants. Plaintiff
appeals. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
8 Am Jur, Brokers §§ 24, 158.

*Parmenter & Forsythe* (*Robert L. Forsythe,* of counsel), for plaintiff.

*Joseph T. Riley,* for defendant Hackley Union National Bank, trustee, and for individual defendants.

*Alexis J. Rogoski* and *Robert Bunker Rogoski,* for defendant Rogoski, executor and trustee.

Kelly, J.   Plaintiff sued to obtain realtor's commission allegedly earned by sale of real estate. Plaintiff appeals from a directed verdict for defendants.

The property in question is located in Muskegon, Michigan.   The history of the title shows that on December 4, 1922, legal conveyance of the premises was made to Paul J. Schlossman, Frank Hubbard Smith, Henry A. Bauknecht and Jesse G. Bauknecht, composing the Paul J. Schlossman Company, a copartnership.

Under date of March 9, 1927, the partnership articles were amended and said amendment placed on record.   This amendment provided:

"It is agreed between the parties hereto that all lands and other interests in realty now held or hereafter acquired by said partners shall be held by them as tenants in common and not as tenants in copartnership; that said partners shall have the interest in said land and realty set opposite their respective names, *viz:* Paul J. Schlossman, an undivided 1/3; Frank Hubbard Smith, an undivided 1/3; Jesse G. Bauknecht, an undivided 1/6; Henry A. Bauknecht, an undivided 1/6.   It is further agreed that if for any reason this article shall be held insufficient to constitute said parties tenants in common in said land and realty, then said parties, their heirs, legal representatives and assigns shall execute such instruments of conveyance as shall be required in or-

der to constitute said parties tenants in common, having undivided interests in said land and realty in the proportions above mentioned."

As the original partners died, their heirs succeeded to their interest so that title was in the present defendants on July 1, 1950, when another partnership agreement was executed. This agreement followed the death of Paul J. Schlossman, and provided, in part:

"Article 11—It is agreed between the parties hereto that all realty now held or hereafter acquired by the copartners shall be held by them as tenants in common, and not as tenants in copartnership, but that the income from said real estate shall, subject to the provisions of article 7 hereof, be deemed, treated and dealt with as copartnership assets."

Article 7, above referred to, is not important to this litigation as it only provided for the respective interests of Ruth Bauknecht McNiff and Nynah Bauknecht.

Notice of dissolution of the partnership was filed on February 19, 1953, by the executor of the estate of Paul J. Schlossman. The real estate involved comprised 6 pieces of valuable commercial property, including the parcel referred to as the "Kresge building," which is the subject of this litigation.

After receiving the notice of dissolution, the various individuals, who held as either partners or as tenants in common, agreed to partition or division of moneys obtained through sale of the property.

The defendant bank, as trustee under the will of Henry A. Bauknecht, contacted several realtors, including plaintiff, advising them that the Kresge property was for sale.

Plaintiff was well-acquainted with the Kresge property, as he was the realtor who consummated the long-term lease between the partnership and the

Kresge Company. This lease provided for a right of purchase by the Kresge Company matching the highest bona fide offer of purchase, if defendants decided to sell.

Between July 10, 1953, and March 27, 1954, several letters were exchanged between plaintiff and the bank as trustee, in regard to this property. The interest defendant bank represented was merely 1/6, and plaintiff did not, directly or indirectly, have contact with the several owners of the remaining 5/6 interest.

On January 11, 1954, plaintiff went to the Muskegon bank and informed its officers that he had an offer for $220,000. A letter was prepared by the bank, signed by plaintiff, which read:

"January 12, 1954

"The Hackley Union National Bank
"Muskegon, Michigan

*"Gentlemen:*

"Trustee under the will of
Henry A. Bauknecht

"In your capacity as trustee in the above-captioned estate you own a 1/6 interest in property located at 261–263 West Western avenue which is leased to S. S. Kresge Company. This property is for sale and I have procured a bid from Norman Barnes & Company, Chicago, Illinois, of $220,000 for the property. Under the terms of the S. S. Kresge lease they have the option of meeting any bid for the property within 30 days.

"On occasions in the past as well as in correspondence the Hackley Union National Bank as trustee has stated that they would not approve the payment of 2 commissions on the sale of this property. Should claims for 2 commissions arise, the real-estate brokers involved shall themselves settle the question

without implicating the sellers in any way whatso-
ever.

"I agree to pay the expenses of an appraisal of the
land and building to be made by an appraiser, the
legal services of Paul Lathan, 310 South Michigan
avenue, Chicago, Illinois of $500 and such other rea-
sonable expenses as may be incurred not to exceed
$125, enabling the sellers to net $209,000 from this
sale.

"Yours very truly,
"WESTLEIGH H. VOTH."

The bank notified the Kresge Company of the of-
fer, and on February 10, 1954, Kresge elected to pur-
chase for the same amount as the offer, namely,
$220,000.

A commission of 5% was paid by defendants to
the real-estate agent who represented the Kresge
Company. The record does not show what services
that real-estate agent performed to consummate the
$220,000 deal, but it is conceded that said realtor
could not have successfully demanded and prosecut-
ed an action against defendant bank for said com-
mission.

In determining that a judgment of no cause for
action should be entered, the Honorable Archie D.
McDonald, circuit judge, filed a written opinion in
which he stated:

"It is the theory of the plaintiff that the interest
represented by the bank as a partner was in process
of liquidating the partnership and thereby had au-
thority to bind the partners in an agreement to pay
commission.

"It is also a theory of the plaintiff that if the
foregoing principle does not apply, that the parties
were engaged in a joint venture.

"The following questions therefore must be con-
sidered:

"*Question 1.* Was the property owned by the respective parties as tenants in common a part of the partnership being liquidated?

"*Question 2.* Has there been sufficient memoranda in writing to take the case out of the statute of frauds?

"*Question 1.* Was the property owned by the representative parties as tenants in common a part of the partnership being liquidated? It would appear from the discussion of this question that both parties are in agreement that the question of whether or not the property in question owned by the respective parties as tenants in common is part of the partnership assets is a matter of intent. Reference is made to article 3 of the articles of copartnership which provides as follows:

" 'The object of this copartnership is to own, run, conduct and operate theaters, exhibits, shows, entertainments, and other amusements; to buy, purchase, lease, option or otherwise acquire or exchange, sell, or otherwise dispose of, mortgage or deal in real estate, lands, or buildings for the erection and establishment of theaters, halls, offices, stores and warehouses.'

"Even though the property owned by the parties at the time of the inception of the copartnership was held on the books as partnership property, it would appear that this was for the purpose of using the property to its best advantage, and the other purposes of the partnership were as set forth in said copartnership articles. In this case we have no intervening rights of creditors, and as this court views the testimony the meeting in March, amongst other things, was, so far as property held in common was concerned, pertaining to a partition thereof. This is pretty strongly evidenced in the case of the Schlossman estate represented by Mr. Rogoski. * * *

"A review of the entire evidence would indicate to this court that the liquidation as to the partnership involved profits or any other acquisition of assets in

the operation of the copartnership. The holding of the property as tenants in common determined their interest in the partnership, but each owned his property separately. As stated above, no rights of creditors are involved, and the evidence indicates a partition of their respective properties in the manner agreed upon.

"Plaintiff has presented a challenging claim to his postition, but the court is of the opinion that on all the evidence is not tenable. The court has concluded, therefore, that at the time of sale the parties were not copartners but merely tenants in common of certain properties.

"*Question 2.* Has there been sufficient memoranda in writing to take the case out of the statute of frauds?

"The court having decided that the property of the respective defendants is owned by them as tenants in common, and only part of the partnership for tax purposes, et cetera, this question would seem to be disposed of by discussion of the question already discussed.  *  *  *

"The record does not support plaintiff's claim that the sale of this property was a joint venture.

"There is no written authority to the bank to bind the other owners to the payment of a commission, and the bank not being a partner in the ownership of said land could not bind the others.

"A judgment of no cause for action may be entered."

It is not necessary in this opinion to set forth the entire section of the Michigan statute of frauds (CL 1948, § 566.132 [Stat Ann 1953 Rev § 26.922]), which provides in part that any "agreement, promise or contract to pay any commission for or upon the sale of any interest in real estate" shall be void unless such agreement "be in writing and signed by the party to be charged therewith."

We agree with the trial court that defendants held as tenants in common; that this litigation does not

sustain appellant's conclusion that this was a joint: venture; that there was no written authority to the bank to bind the owners of the property to the payment of a commission and that the provisions of the Michigan statute of frauds, above cited, requiring that an agreement be in writing and signed by the parties to be charged therewith in order to make it a binding agreement to pay commission for the sale of real estate, was not complied with.

Affirmed.   Costs to appellees.

DETHMERS, C. J., and CARR, SMITH, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.