**LOUIS SCHLESINGER COMPANY, a corporation of New Jersey, Plaintiff,**

v.

**The KRESGE FOUNDATION, a Michigan corporation, and Kresge Department Store, Inc., a Delaware corporation, Defendants.**

**Civ. A. No. 932–64.**

United States District Court
D. New Jersey.
Nov. 22, 1966.

See also D.C., 236 F.Supp. 373.

Greenbaum & Greenbaum, by Robert S. Greenbaum, Newark, N. J., for plaintiff.

McCarter & English, by Robert P. Douglass and Julius B. Poppinga, Newark, N. J., for defendants.

## ON CROSS MOTIONS FOR SUMMARY JUDGMENT

## OPINION

WORTENDYKE, District Judge:

In this action the plaintiff, a New Jersey licensed real estate broker, seeks commissions for services alleged to have been rendered in connection with the letting by the defendant, The Kresge Foundation (hereinafter referred to as the Foundation), of additional space in the Foundation's department store building at 715 Broad Street, Newark, New Jersey to Western Electric Company (hereinafter Western), an existing tenant in said building pursuant to an agreement between the Foundation and the plaintiff, dated December 12, 1956 (hereinafter referred to as the 1956 commission agreement).

The action was commenced by the filing of a complaint in the Superior Court of New Jersey, Law Division, Essex County, from which it was removed to this Court by reason of diversity of citizenship between the plaintiff and the Foundation; the requisite jurisdictional amount being conceded.

The complaint alleges that on December 12, 1956 the defendants, the Foundation and Kresge Department Store, Inc. (hereinafter Kresge), entered into a written agreement with the plaintiff to pay commissions to the latter for services rendered in procuring Western as a tenant in the department store building aforesaid; " * * * said commissions to be in accordance with the rates and rules published by the Detroit (Michigan) Real Estate Board which were in effect at that time." The Detroit rules provided as follows:

"2. FOR NEGOTIATING LEASES: The commission for negotiating leases shall be as follows:

5% of the aggregate rental for one year or less, but in no instance less than one-half of the first month's rent. * * * $25.00

On leases for more than one year 5% of the aggregate rental for the first year and 2½% of the aggregate rental for the next four years, and 2% of the aggregate rental for the next five years, and 1% of the aggregate rental for the balance of the term up to and including the 50th year.

## LEASE WITH PRIVILEGE OF RENEWAL

(c) Where lessee avails himself of privilege of renewal or extension of lease, or takes on additional space under provisions of original lease, the negotiating broker shall be entitled to additional compensation at same rates as applied to original case, when and as said lessee avails himself of such privileges."

The complaint further alleges the following: (1) On or about February 15, 1957, through the negotiations of plaintiff, Western entered into a lease with the defendant Foundation for a period of ten years for space on the eighth and ninth floors of the department store building, said term to commence on the date of delivery of one half of the leased space on the eighth floor. (2) On or about April 12, 1957, the Foundation paid to the plaintiff $81,552.27 for services rendered in connection with the

successful negotiation of the aforesaid lease. (3) On or about June 9, 1964, Western acquired additional space on three additional floors of the building.[1] Plaintiff claims a right to a commission in connection with this additional letting, to include interest.

Process upon the complaint as filed in the Superior Court was by way of a Writ of Attachment which was executed by levy upon the Foundation's department store. An Order denying defendant's motion to dismiss or to quash the Writ of Attachment was made by this Court on December 16, 1964 for the reasons stated in this Court's Opinion filed December 10, 1964.

Plaintiff filed an amended complaint against the defendant Foundation on December 9, 1964 in which plaintiff again alleges the 1956 commission agreement between the Foundation and plaintiff; the provisions of the rules of the Detroit Real Estate Board; and the ten-year lease of February 15, 1957 between the Foundation and Western, procured through the negotiations of the plaintiff. Annexed to the amended complaint is a copy of the lease of February 15, 1957, which granted to the lessee a renewal option for an additional five-year period, and a right of first refusal to lease any additional space in the building which might become available during the ten-year term of the lease, at a rental to be agreed upon by the parties. The amended complaint again alleges the April 12, 1957 payment of $81,552.27 by the Foundation to the plaintiff, and the acquisition by Western of the additional space under the lease of June 9, 1964. Plaintiff alleges that it was not advised of the pendency of negotiations leading up to the execution of the 1964 lease and was thereby excluded from participation in said negotiations.

The plaintiff charges the following in its amended complaint: (1) "To the extent that the 1964 lease provides for a term beyond the expiration date of the ten year tenancy provided for in the 1957 lease, such taking constitutes a renewal of the lease as to the eighth and ninth floors by the tenant exercised pursuant to the privilege of renewal in the 1957 lease." (2) "The letting aforesaid as to the fifth, sixth and seventh floors constitutes the taking of additional space under the provisions of the original lease agreement of 1957." Accordingly, plaintiff seeks " * * * the full amount of commissions due and payable upon the execution of the lease agreement of June 9, 1964" pursuant to the 1956 commission agreement and the rates and rules of the Detroit Real Estate Board.

The defendant Foundation admits that the 1956 commission agreement was duly executed and that the Detroit rules as set forth in the complaint were published March 15, 1956. The Foundation also admits its entry into the 1957 lease with Western; the payment by defendant to plaintiff of $81,552.27 on April 12, 1957; and the execution of the 1964 lease with Western. In a series of affirmative defenses, the defendant also pleads as follows:

(1) Lack of subject matter jurisdiction in the Court because of the impropriety of the issuance of the Writ of Attachment.

(2) Lack of personal jurisdiction over the Foundation because it was not served with process within the District of New Jersey.

(3) Lack of jurisdiction in this Court over the person and property of the Foundation because no process other than the Writ of Attachment was served and because that Writ was improperly issued.

(4) Lack of jurisdiction in the Court as to the person and property of the Foundation because of

---

1. This additional letting related to floors five, six, and seven. There are *two* June 9, 1964 lease agreements; the one con- trolling in this case was recorded in the Office of Register of Deeds and Mortgages, Essex County, New Jersey.

impropriety in the issuance of the Writ, lack of service of process within the District, and absence of process other than an improperly issued Writ.

(5) The payment of $81,552.27 on April 12, 1957 constituted an accord and satisfaction of the mutual rights and obligations of the parties arising out of services rendered by the plaintiff in connection with the lease of February 15, 1957.

(6) The payment aforesaid constituted payment in full; and the amount thereof was negotiated and calculated on the basis of the Detroit rates.

(7) The lease of February 15, 1957 was not negotiated by plaintiff.

(8) The services of plaintiff in connection with the lease of February 15, 1957 were not those of a negotiating broker entitled to a commission.

(9) Plaintiff's attempt to negotiate a lease between the Foundation and Western was ineffective. The terms of the letting were negotiated directly with Western, without plaintiff's services. Before reaching an agreement with Western, plaintiff and defendant negotiated between themselves the matter of plaintiff's compensation for its alleged services and plaintiff agreed to accept, and did accept, said negotiated amount by its letter of December 12, 1956. The amount paid by defendant on April 12, 1957, calculated in accordance with the agreement of December 12, 1956, was accepted by the plaintiff.

(10) Although plaintiff was not licensed as a real estate broker in the State of Michigan, it nevertheless acted as such in that State in violation of the State law of Michigan by offering to lease real estate for others and procuring defendant's execution of the commission agreement which thereby was rendered illegal, void and unenforceable.

(11) Plaintiff at all times mentioned in the amended complaint was not a licensed real estate broker in the State of Michigan but nevertheless entered into the commission agreement in that State with a citizen thereof. The agreement was accordingly illegal, void and unenforceable.

(12) The agreement of June 9, 1964 did not constitute an availing by Western, as lessee under the 1957 lease, of a privilege of renewal or extension of the lease.

(13) The agreement of June 9, 1964 was not a taking on by Western, as lessee under the 1957 lease, of additional space under the provisiors of said lease.

(14) The agreement of June 9, 1964 was not an availing by Western, as lessee under the 1957 lease, of any privilege contained in said lease.

(15) The agreement of June 9, 1964 was not an availing, by the lessee in the 1957 lease, of any privilege or provision negotiated by plaintiff and contained in said lease.

(16) The agreement with Western of June 9, 1964 was not the result, directly or indirectly, of any services of plaintiff.

(17) On or about April 27, 1964, the Foundation contracted to sell all of its rights, title and interest in and to the premises which were the subject matter of the commission agreement, and thereby terminated the liability of defendant under said agreement.

(18) The agreement of June 9, 1964 between the Foundation and Western was executed by the Foundation as holder of the legal

title on behalf of the equitable owner, and the Foundation acted as an agent of such equitable owner in executing the June 9, 1964 agreement.

## THE 1957 LEASE

By the provisions of a written lease dated February 15, 1957, drawn by New Jersey counsel for the Foundation, the latter corporation leased to Western floor space on the eighth and ninth floors of the lessor's department store building located at 715 Broad Street, Newark, New Jersey, for a term of ten years to commence on the date of delivery of possession by lessor to lessee of one half of the space on the eighth floor. The lease granted to the tenant an option to renew for an additional period of five years upon the same terms and conditions, upon written notice thereof to the lessor at least nine months prior to the expiration of the term of the 1957 lease. The instrument further provided as follows:

> "The Lessor shall offer first to the Lessee, which shall have the right of first refusal, to rent any other space in the building, and available for leasing, of which the demised space is a part, which may become vacant during the term of this lease, at a rental to be agreed upon by the parties. The Lessor's offer shall be in writing and must be accepted by the Lessee by notice in writing to the Lessor within thirty (30) days after receipt of said offer."

## THE 1964 LEASE

On October 1, 1964, there was recorded in the Office of Register of Deeds and Mortgages for Essex County, New Jersey, in Book 4047 of Deeds, commencing at page 350, a written lease dated June 9, 1964 from the Foundation, as lessor, to Western.

This lease by its terms "supersedes" the 1957 lease, and the parties mutually agreed that the 1957 lease was thereby terminated and no longer in effect, except that any advance payments of rent made under the 1957 lease should be credited to the first rental payments due under the 1964 lease. The latter lease covers the fifth, sixth, seventh, eighth and ninth floors of the building. The term of the lease was to " * * * commence immediately and shall extend for a period of five (5) years from the date of final delivery of all space hereby demised in accordance with the schedule hereinafter set forth." The 1964 lease also provided that the lessee should pay to the lessor $1,975,000 toward the cost and expense of work to be performed by the lessor for the lessee in the demised premises. After final delivery of all space demised by lessor to lessee, the parties would enter into a recordable agreement expressing the actual date of the commencement of the five-year term. Of the demised premises, possession of the eighth and ninth floors of the building was agreed to be delivered immediately upon the execution of the lease.

## THE $81,552.27 PAYMENT OF APRIL 12, 1957

In the affidavit of William H. Baldwin, a trustee of the Foundation, sworn to March 28, 1966, and filed in connection with the Foundation's opposition to plaintiff's motion for summary judgment, it appears that in July, 1963, he was entrusted with the responsibility of disposing of the department store business known as Kresge-Newark, Inc. and the building occupied by it at 715 Broad Street, Newark, New Jersey, a portion of which was leased by the Foundation to Western. On March 1, 1964, Baldwin was advised by Western of the latter's desire to discuss its tenancy. Baldwin states that on March 9, 1964 he was in communication with Western " * * * regarding their taking of additional space and to see if we could arrive at some conclusions about a renewal of the lease for the 8th and 9th floors * * * " which Western then occupied under their lease of February 15, 1957. In consequence of Baldwin's further conference with Western's representatives on March 17, 1964, he was convinced that Western was not interested in renewing

the existing lease for the eighth and ninth floors nor in taking additional space unless the Foundation was prepared to meet Western's " * * * unique and extraordinary requirements". There was at this time no space vacant and available for letting in the building. Numerous improvements in the building were required by Western as a condition to its taking of the fifth, sixth and seventh floors in addition to the eighth and ninth floors, and these alterations were estimated to cost approximately $1,000,-000. Baldwin's affidavit continues: "Eventually new lease arrangements were entered into as evidenced by the 'Old New Lease' and the 'New New Lease'[2] providing substantially for all of the above listed [Western] requirements. Insofar as Kresge Foundation was concerned, the new lease arrangements were an outgrowth of the decision to dispose of the [department store] business and building, and insofar as Western Electric was concerned, it was clear to me that it was an outgrowth of their decision to consolidate, if not at the Kresge location, at some other location." Baldwin contends that the new lease arrangements can in no sense be regarded as Western's exercise of the option to renew the 1957 lease, or as the taking of space available for leasing which became vacant during the term of the 1957 lease. Baldwin annexes to his Affidavit as Exhibit B the "Old New Lease" and as Exhibit C the "New New Lease" referred to in his affidavit. Each exhibit bears the same date and recites that it was executed on the day of its date. Lessor's corporate acknowledgment was made on September 14, 1964 and that of lessee on September 8, 1964.

With its letter, dated April 12, 1957, the Foundation transmitted a check in the amount of $81,552.27 payable to Schlesinger "in full payment for your [plaintiff's] services rendered in connection with the lease between the Foundation and Western Electric Company dated February 15, 1957 covering the eighth and ninth floors of the premises located at 715 Broad Street, Newark, New Jersey." The amount of that check, as shown by the calculations set forth in the letter, was computed by multiplying the total rental for respective lease periods by the applicable percentages as prescribed by the Detroit rates. I find therefore that the parties mutually recognized the validity of the 1956 commission agreement and that the payment of $81,552.27 on April 12, 1957 by the Foundation to the plaintiff was in full discharge of the Foundation's obligation under that agreement with respect to the 1957 lease. I conclude therefore that, upon the receipt by plaintiff of the payment of its commission, there terminated all further rights and obligations under the 1956 commission agreement in and upon the respective parties thereto.

## CONFLICT OF LAWS

In this case, jurisdiction exists by virtue of diversity of citizenship, and the conflicts rules to be applied are those of the forum State, New Jersey. American Plan Corp. v. State Loan & Finance Corp., 365 F.2d 635, 637 (3rd Cir. 1966) citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). This being so, the interpretation to be placed upon the 1956 commission agreement, which is a Michigan contract, and the determination of the applicability of the Michigan Statute of Frauds[3] to this commission agreement are questions of conflict of laws, and must be determined by applying the conflict of laws rules which prevail in New Jersey. Klaxon Co. v. Stentor Elec. Mfg. Co., supra at 496, 61 S.Ct. 1020. Resort to the pertinent conflict of laws rules of New Jersey is made in order to ascertain the law of Michigan. Waggaman v. General Finance Co., 116 F.2d 254, 257 (3rd Cir. 1940).

Looking to New Jersey law, the 1956 commission agreement is to be

---

2. The "New New Lease" is the recorded instrument referred to in footnote 1.

3. C.L.1948, § 566.132; Stat.Ann.1953 Rev. § 26.922.

construed according to the law of Michigan. Polyckronos v. Polyckronos, 17 N.J.Misc. 250, 253, 8 A.2d 265, 269 (Court of Chancery of New Jersey 1939), cited with approval in Lind v. Schenley Industries, Inc., 278 F.2d 79, 84 (3rd Cir. 1960) cert. denied 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960). Such contractual interpretation includes a consideration of the applicability of the Michigan Statute of Frauds. Dacosta v. Davis, 24 N.J.L. 319, 328 (N.J.Sup. 1854), cited with approval in Eliscu v. Fiber, 157 F.2d 136, 138 (3rd Cir. 1946).[4] The Court may inform itself of Michigan Law in such manner as it deems proper. M. N. Axinn Co. v. Gibraltar Development, 45 N.J.Super. 523, 535, 133 A.2d 341, 347 (1957) citing Uniform Judicial Notice of Foreign Law Act, N.J.S.A. 2A:82–28.

## PLAINTIFF'S CONTENTIONS

Plaintiff seeks to construe the 1956 commission agreement as extending to the 1964 lease, contending that (1) the 1956 commission agreement purports to incorporate by reference the Detroit rates and rules, and (2) the 1964 lease was a renewal of Western's tenancy of floors eight and nine, and also created a tenancy in additional space on floors five, six, and seven of the building.

As to incorporation by reference of the Detroit rates *and rules* into the 1956 commission agreement, it is clearly shown from a reading of plaintiff's pretrial memorandum, at page four, that the parties sought to resolve *only the amount* of commission to be paid for plaintiff's services in procuring a tenant for the Foundation's building. For the purpose of computing this amount, the Detroit rates were utilized.

There is no indication that the parties intended to incorporate other provisions of the Detroit rules. At this same page in plaintiff's pretrial memorandum, plaintiff stated that it had indicated to the Foundation an intention to be protected as to " * * * the payment of future commission in the event of any renewal or taking of additional space by Western * * *. This principle met with no objection from Howard C. Baldwin, the sole subject matter of the dispute being the rate at which commission would be paid." However, such intention is not stated in the 1956 commission agreement.[5] It is well-settled that parol evidence will not serve to insert such an intention;[6] nor will this Court attempt to re-write the contract between the parties. The plaintiff could have specifically protected an interest in additional commissions by inserting a proper provision in the commission agreement. See Plumbing Industry Program, Inc. v. Good, 120 So.2d 639, 641, 79 A.L.R.2d 1060 (Dist.Ct. of Appeal of Fla., 3rd Dist. 1960) reh. denied June 7, 1960. Further, under Michigan law, " * * * Every agreement, promise or contract to pay any commission for or upon the sale of any interest in real estate * * * " is void unless in writing and signed by the party to be charged therewith. C.L.1948, § 566.132; Stat.Ann. 1953 Rev. § 26.-922. A lease for a term of years is a sale of an interest in real estate within the meaning of the Michigan statute above-cited. Hannan Real Estate Exch. v. Traub, 217 Mich. 162, 185 N.W. 706, 707 (Supreme Ct. of Mich.1921). Therefore, in order to find that plaintiff is entitled to the relief sought here, there must be shown a written instrument to that effect, signed by the Foundation. Voth v.

---

4. Note that in *Dacosta,* supra, the fact, that the place of performance and of the situation of the subject-matter of the contract in a foreign State, can give no validity to a contract void under the statute of frauds of the State where made.

5. This 1956 commission agreement was accepted in Michigan by the Foundation; hence, it is a Michigan contract and governed by Michigan law.

6. See Brady v. Central Excavators, Inc., 316 Mich. 594, 25 N.W.2d 630, 635 (Supreme Ct. of Mich. 1947); Tunley v. Beall, 323 Mich. 108, 34 N.W.2d 477, 479 (Supreme Ct. of Mich. 1948). The parol evidence rule is given a more strict interpretation where a writing is required by statute.

Hackley Union National Bank of Muskegon, 353 Mich. 596, 91 N.W.2d 857, 861 (Supreme Ct. of Mich.1958). Thus, it appears that plaintiff's only possible valid claim to a renewal commission must of necessity be based upon the language in the 1956 commission agreement, i.e., " * * * will pay the real estate commission in accordance with the rates <u>and rules</u> published by the Detroit (Michigan) Real Estate Board * * * ". (underlining supplied) The *rules* of the Detroit Real Estate Board provide, in pertinent part, as follows:

"LEASE WITH PRIVILEGE OF RENEWAL

(c) Where lessee avails himself of privilege of renewal or extension of lease, or takes on additional space under provisions of original lease, the negotiating broker shall be entitled to additional compensation at same rates as applied to original case, when and as said lessee avails himself of such privileges."

It would appear, from a bare reading of the above-quoted portion of the Detroit rules that, since the 1956 commission agreement appears to incorporate the Detroit rates *and rules*, the parties in this case would be bound by the Detroit rules, especially the above-quoted portion, as such rules affect the 1956 commission agreement in regard to commissions. This cannot be so, based upon the clear intent of the parties and the application of the Michigan Statute of Frauds, supra.

As to the second contention of plaintiff, that the 1964 lease was a renewal of Western's tenancy of floors eight and nine, and the taking of additional space as to floors five, six, and seven, there is no need to address myself to these contentions for the reason that there would be no entitlement to renewal commissions in any event, for the reasons hereinbefore stated.

However, I shall make this observation, based upon a more thorough study of the specific provisions of the 1957 and 1964 leases:

The 1964 lease, by its terms in paragraph #1, seeks to "supersede" the 1957 lease. However, upon further reading of the 1964 lease, it is evident that the intent of the parties to "supersede" the 1957 lease was at best qualified and conditional. For example, in the third paragraph of paragraph #2, the 1964 lease states: " * * * in which event the lease of February 15, 1957 shall be automatically reinstated to the same effect as if never terminated hereby". To the same effect, in the fifth paragraph of paragraph #2, where the 1964 lease states: "In the event of such termination the lease of February 15, 1957 shall be reinstated in full force and effect as of the date of such termination." It is therefore evident from these provisions of the 1964 lease that the parties intended, in paragraph #1 of this lease, to terminate the 1957 lease *only* in a qualified and conditional way, contingent upon Western's (lessee) approval of the work to be done in the department store building pursuant to the 1964 lease. Further, Western did not give, prior to the expiration of the term of the 1957 lease, written notice to the Foundation of Western's intention to exercise the option contained in the 1957 lease.

DEFENDANT'S CONTENTIONS

The defendant has affirmatively pleaded numerous separate defenses. The first four of these separate defenses consist of a reiteration of the grounds of defendant's motion to dismiss the complaint which the Court overruled in its Opinion filed December 10, 1964.

Defendant further affirmatively pleads that the payment, made by the Foundation to plaintiff on April 12, 1957, in the amount of $81,552.27 was in satisfaction of the mutual rights and obligations of the parties arising out of services rendered by the plaintiff in connection with the 1957 lease. With this contention the Court agrees, as it does with the related contention, that the payment was computed in accordance with

the Detroit rates. The Court, however, disagrees with defendant's contention that the 1957 lease was not negotiated by the plaintiff and that any services of the plaintiff in connection therewith were not those of a negotiating broker entitled to a commission.

The remaining affirmative defenses pleaded by the defendant in its answer to the amended complaint, commencing with the ninth separate defense thereto, do not require consideration in view of the Court's conclusion.

 I conclude that the 1956 commission agreement does not create in the plaintiff any right to a commission in regard to the 1964 lease. The motion of the defendant Foundation for summary judgment against the plaintiff Louis Schlesinger Company must prevail. Plaintiff's motion for summary judgment against the defendant must be denied.

Let an order in conformity with the foregoing Opinion be presented.